**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

DALIA MIRANDA, on behalf of herself            Civil Action No. 20-23257-AMC-Civ-Cannon
and all others similarly situated

      Plaintiff,                                                   Honorable Aileen M. Cannon

vs.                                                                         Mag. Judge Alicia M. Otazo-Reyes

WASTE MANAGEMENT INC. OF FLORIDA,

      Defendant.

_____/

**PLAINTIFF'S UNOPPOSED MOTION AND MEMORANDUM OF LAW IN SUPPORT**
**OF FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

## **Table of Contents**

**Page**

INDEX OF AUTHORITIES..................................................................................... iv

INDEX OF EXHIBITS .......................................................................................... vii

I.     INTRODUCTION ..........................................................................................1

     A.  Summary of the Litigation .........................................................................3

     B.  Terms of the Proposed Settlement ..............................................................4

II.    ARGUMENT ..................................................................................................7

     Legal Standard ...............................................................................................7

     A.     The Settlement Was Reached as a Result of Arm's Length Negotiations with the Assistance of an Experienced and Disinterested Third Party Mediator, and There Was No Fraud or Collusion between the Parties in Reaching the Settlement Agreement ..................................................................................................8

     B.     The Complexity, Expense, and Duration of the Litigation Weighs Strongly in Support of Finally Approving the Settlement ........................................................10

     C.     The Stage of Proceedings at which the Settlement Was Achieved and the Amount of Discovery Completed Supports Final Approval..................................................11

     D.     The Probability of the Plaintiffs' Success on the Merits in This Complex Environmental Class Action Weighs in Favor of this Outstanding Settlement.....13

     E.     This Settlement Is Firmly within the Range of Possible Recovery and Should Be Finally Approved ..................................................................................................15

     F.     The Overwhelmingly Positive Reaction of the Class and the Lack of Meritorious Objections Weighs Very Heavily in Favor of Approving the Settlement ............17

     G.     The Notice Was Effective and Constituted the Best Notice Practicable Under the Circumstances ..................................................................................................19

CONCLUSION........................................................................................................20

iii

## <u>Table of Authorities</u>

**Page**

**Cases**

*Allapattah Servs. v. Exxon Corp.*, 2006 U.S. Dist. LEXIS 88829 (S.D. Fla. April 7, 2006) ...................................................................................................................................................18

*Alley v. Western Sugar Cooperative,* District Court, County of Morgan Case No. 2017-cv-30078 ........................................................................................................12, 16

*Babb v. Lee Cty. Landfill SC, LLC*, 298 F.R.D. 318 (D.S.C. 2014) .............................................14

*Babb v. Lee Cty. Landfill SC, LLC*, 747 S.E.2d 468 (2013) ........................................................14

*Batties v. Waste Mgmt. of Pa., Inc.*, No. 14-7013, 2016 U.S. Dist. LEXIS 186335 (E.D. Pa. May 11, 2016) ....................................................................................................................................10

*Behrens v. Wometco Enterprises, Inc.*, 118 F.R.D. 534 (11th Cir. 1988) ..........................7, 12, 16

*Bennett v Behring Corp.,* 737 F.2d 982, 986 (11th Cir. 1984) ......................................................8

*Brooks v. Darling Int'l, Inc.,* No. 1:14-cv-01128-DAD-EPG, 2017 U.S. Dist. LEXIS 49660 (E.D. Cal. Mar. 30, 2017) ..........................................................................................................14

*Chakejian v. Equifax Info. Servs.,* 275 F.R.D. 201, 212 (E.D. Pa. 2011) ....................................19

*Durrance v. Sanders*, 329 So. 2d 26, 28-29 (Fla. Ct. App.1976) .................................................17

*Eisen v. Carlisle & Jacquelin*, 417 U.S. 156 (1974).....................................................................20

*Fruitstone v. Spartan Race Inc.*, 2021 U.S. Dist. LEXIS 19385, 2021 WL 354189 (S.D. Fla. Feb. 2, 2021) ...........................................................................................................................8, 9, 18

*Fuehrer v. Nestle Purina Petcare Co.,* Case No. 5:20-cv-03910 (E.D. Pa.) ...............................16

*Griffin v. Carlin*, 755 F.2d 1516, 1533 (11th Cir. 1985) .............................................................10

*Guthrie v. A Plus Home Health Care, Inc.*, 2014 U.S. Dist. LEXIS 199052, 2014 WL 12862436 (S.D. Fla. Nov. 5, 2014) ..........................................................................................................13

*Hall v. AT&T Mobility LLC*, 2010 WL 4053547, (D.N.J. Oct. 13, 2010) ......................................9

*Hall v. Bank of Am., N.A.*, 2014 U.S. Dist. LEXIS 177155, 2014 WL 7184039 (S.D. Fla. Dec. 17, 2014) ..........................................................................................................................................13

iv

*Hamilton v. 3D Idapro Solutions, LLC*, United States District Court Western District of Wisconsin Case No. 18-cv-54-jdp ...................................................................................12, 14, 16

*In re Hi-Crush Partners L.P. Sec. Litig.*, No. 12-CIV-8557 CM, 2014 U.S. Dist. LEXIS 177175, 2014 WL 7323417, at *3 (S.D.N.Y. Dec. 19, 2014) ...................................................................10

*In re United States Oil and Gas Litig.*, 967 F.2d 489 (11th Cir. 1992) ...................................7, 11

*In re Viropharma Inc. Sec. Litig.*, 2016 WL 312108 (E.D. Pa. Jan. 25, 2016) ..............................9

*Keech and Newfield v. Sanimax USA, LLC*, United States District Court District of Minnesota Case No. 18-cv-683 ...........................................................................................................11, 16

*Leverso v. S. Trust Bank of Ala., N.A.*, 18 F.3d 1527, 1530 n.6 (11th Cir. 1994) ....................8, 18

*Lobatz v. U.S. In re Educ. Testing Serv. Praxis Principles of Learning & Teaching, Grades 7-12 Litig.*, 447 F. Supp. 2d 612, 619-20 (E.D. La. 2006) ...................................................................9

*Montoya v. PNC Bank, N.A.*, 2016 U.S. Dist. LEXIS 50315, *70-73 (S.D. Fla. April 13, 2016) 19

*Narvaez v. Law Offices of Antonio Duarte, III, P.A.*, 2015 U.S. Dist. LEXIS 37744, 2015 WL 1353219 (M.D. Fla. March 25, 2015) ......................................................................................10

*Nelson v. Mead Johnson & Johnson Co.*, 484 F. App'x 429, 434 (11th Cir. 2012) .....................8

*Newman v. Eduardo Meloni, P.A.*, 2020 U.S. Dist. LEXIS 100063, 2020 WL 3052801 (S.D. Fla. June 5, 2020) .........................................................................................................................20

*Plass, et al v. Sanimax USA, LLC*, Brown County Wisconsin Circuit Court Case No. 2015-cv-000165................................................................................................................................12, 16

*Poertner v. Gillette Co.*, 618 F. App'x 624, 630 (11th Cir. 2015) .................................................9

*Powell v. Tosh*, No. 5:09-CV-00121, 2013 U.S. Dist. LEXIS 120448 (W.D. Ky. Aug. 2, 2013) ...................................................................................................................................................14

*Ressler v. Jacobson*, 822 F. Supp. 1551, 1554 (M.D. Fla. 1992) .................................................11

*Thorpe v. Walter Inv. Mgmt. Corp.*, 2016 U.S. Dist. LEXIS 144133, *9-10 (S.D. Fla. October 14, 2016) ............................................................................................................................... 10-11

*Torres v. Bank of Am. (In re Checking Account)*, 830 F. Supp. 2d 1330 (S.D. Fla. 2011) ................................................................................................................................15

*Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541 (2011) ...........................................................14

v

**Rules**

Fed. R. Civ. P. 23(e) ............................................................................................................. *passim*

## <u>Index of Exhibits</u>

**Exhibit 1** – Declaration of Steven D. Liddle

**Exhibit 2** – [Proposed] Final Judgment and Order

**Exhibit 3** – Opt-Out List

**Exhibit 4** – Objection(s)

## I.      INTRODUCTION

Plaintiff Dalia Miranda brought this action on behalf of herself and a proposed class of her neighbors, alleging that odorous emissions from Defendant Waste Management Inc. of Florida's landfill ("Medley Landfill" or "the Landfill") have entered upon her property, and similarly situated properties throughout the Class Area, interfering with the ability of Plaintiff and the proposed class to use and enjoy their homes and properties.

Following an extensive investigation by Plaintiff's experienced counsel, Liddle & Dubin, P.C., which specializes in complex environmental class actions involving noxious industrial emissions, informal discovery between the parties, adjudication of a motion to dismiss on the pleadings, and a full-day mediation on December 2, 2020 before a neutral mediator, Nancy F. Lesser, Plaintiff presented an unopposed motion to the Court with a proposed settlement agreement that would finally resolve Plaintiff's property damage claims on behalf of the proposed class. On May 5, 2021, this Court granted preliminary approval of the Settlement Agreement under Fed. R. Civ. P. 23(e), and ordered that notice be disseminated to the Class. (ECF No. 35).[1]

Under the Settlement Agreement, which is now offered to the Court for final approval, Defendant will create a common fund for the benefit of the Class in the amount of $1,112,500.00, which will be distributed on an equal basis from the Net Settlement Proceeds to Class Members

_____

[1] Through its Preliminary Approval Order, the Court conditionally certified the proposed Settlement Class for settlement purposes (ECF No. 35, ¶2), appointed Plaintiff Dalia Miranda as Named Class Representative and her counsel as Class Counsel (ECF No. 35, ¶3), preliminarily granted class certification under Fed. R. Civ. P. 23 (ECF No. 35, ¶4), made factual findings demonstrating that the relevant factors weighed in favor of preliminarily declaring the Settlement Agreement as fair, adequate, and reasonable (ECF No. 35, ¶5), approved the Notice Plan for dissemination of direct first class mail notice to the Settlement Class and online publication of the class settlement as "the best notice practicable under the circumstances" (ECF No. 35, ¶6), and set the date for a Final Approval Hearing to be held on September 15, 2021. (ECF No. 35, ¶15).

who timely submitted a valid claim form. (ECF No. 34-1, pg. 8 of 32, Sec. III, ¶y). The Settlement Agreement also procures significant remedial measures to the Medley Landfill, which are valued at approximately $500,000. (*Id.*)

Plaintiff is pleased to report that direct mail notice was successfully distributed to the Class via first class mail by Class Counsel in the form approved by the Court, with instructions provided for how Class Members could exercise their rights to file a claim, opt-out, and/or object to the proposed Settlement Agreement. (**Ex. 1,** ¶31-35; *see also* ECF No. 34-2, pgs. 30-35). Plaintiffs and Class Counsel are also pleased to report that the Settlement Agreement has received an overwhelmingly positive response from the Class and hereby move that the Settlement be finally approved as fair, reasonable, and adequate. (**Ex. 1**, ¶ 36). To date, Class Counsel has received 171 valid, timely claim forms from Class Members. (**Ex. 1,** Liddle Decl., ¶37). 13 Class Members exercised their right to opt-out, relating to 17 subject properties within the Class Area[2] (**Ex. 1**, ¶ 38; **Ex. 3**, Opt-Outs), and only a single objection was submitted to Class Counsel. (**Ex. 1**, ¶39; **Ex. 4**, Objection(s)). Accordingly, Plaintiffs submit this memorandum of law in support of their Unopposed Motion for Final Approval of Class Action Settlement.

Through this motion, Plaintiff submits the attached [Proposed] Final Judgment and Order (**Ex. 2**). Plaintiff requests that this Honorable Court enter **Exhibit 2**, or an order in similar form and substance, into the record as the final judgment and order approving this highly beneficial and

---

[2] Class Member Natalia Guendsechadze submitted a single opt out request and identified two subject properties to which she claimed ownership. Martina Ansereo Quintero submitted two opt out requests and identified two subject properties to which she claimed ownership. Class Member Carmen Cristina Vizzi submitted three opt out requests and identified three subject properties to which she claimed ownership. Under the Settlement Agreement, which references Class Members' right to submit opt-out requests, the total number of valid opt-outs received is 13.

mutually negotiated Settlement Agreement, which is fair, reasonable, and adequate under Rule 23 and provides substantial monetary and remedial relief to Plaintiff and the Settlement Class.[3]

### A.   Summary of the Litigation

Plaintiff filed the Complaint in this case on March 19, 2020 in Florida State Court following an extensive pre-suit investigation by Counsel.[4] (ECF No. 1; **Ex. 1**, ¶11). Plaintiff's Complaint alleged that Defendant has failed to control the emissions that were generated by the landfill, giving rise to causes of action for nuisance and negligence. (ECF No. 24, Pg. 12-16). Plaintiff further alleged that on frequent and recurring occasions, these odorous emissions entered onto her property and interfered with her ability to use and enjoy her home and diminished the value of her property. (ECF No. 24, Pg. 15, ¶71). Defendant strongly denies these allegations.

The pre-suit investigation by Plaintiff's Counsel included freedom of information requests to the Town of Medley, Florida, the City of Doral, Florida, the Florida Department of Environmental Protection and the Miami-Dade County Environmental Resources Management and a comprehensive review of the records thereby obtained. (**Ex. 1**, ¶8). Plaintiff's Counsel also obtained and reviewed reports from members of the putative class regarding the alleged conditions that would become the subject of the complaint. (ECF No. 24, pg. 4-5, ¶25-28; **Ex. 1**, ¶9).

The Complaint sought money damages and injunctive relief for the named Plaintiff and a class of similarly situated owner/occupants and renters of residential property.[5] Despite

---

[3] Plaintiff is authorized to state that Defendant does not oppose the relief requested in this motion. The arguments and contentions contained herein, however, are attributable to Plaintiff only.

[4] On August 5, 2020, Defendant filed a Notice of Removal to this Court. (ECF No. 1).

[5] This Court preliminarily approved the following class, for settlement purposes only, under Rule 23:

Defendant's denial of Plaintiff's claims of wrongdoing, the parties agreed to begin good faith settlement discussions.  To that end, the Court referred the case to mediation, and Counsel for Defendant and Class Counsel voluntarily participated in a full-day mediation with experienced Mediator Nancy F. Lesser. (ECF No. 34-1, pg. 3, ¶H).  As a result of this mediation, which involved arm's-length negotiations between counsel experienced in these matters with the assistance of an experienced mediator, counsel agreed to settle the claims asserted in the Complaint on the terms and conditions set forth herein, subject to the Court's review and approval. (*Id.*)  As a result of the day-long mediation, the parties were able to agree to the essential terms of the settlement that is now presented to the Court for final approval. (**Ex. 1**, ¶13).

### B.      Terms of The Proposed Settlement

Under the proposed Settlement Agreement[6] (ECF No. 34-1), Defendant will be required to provide monetary relief to the Class and perform remedial measures, in exchange for which the Class will release certain claims against Defendant. Defendant will remit payment to create a common fund for the benefit of the Class in the amount of $1,112,500, which will be distributed

---

All owner/occupants, tenants, renters or lessees of each residential property within the Class Area, defined below and as specifically delineated in the Class Area Map, attached as Exhibit A:

Beginning at the intersection/interchange of the Ronald Reagan Turnpike (a/k/a Homestead Extension of Florida's Turnpike, SR 821) and NW 106th Street; East on NW 106th Street on a straight line to NW South River Drive; South on NW South River Drive to the Palmetto Expressway (a/k/a SR 826); South on Palmetto Expressway to NW 58th Street; West on NW 58th Street to the Ronald Reagan Turnpike; North on Ronald Reagan Turnpike to the starting point at the intersection/interchange of the Ronald Reagan Turnpike and NW 106th Street. (ECF No. 35, ¶2).

[6] Capitalized terms shall have the same meaning here as assigned to them in the Settlement Agreement.

on an equal basis to Class Members who timely submit an approved claim form after the payment

of costs and attorney fees, such as the Court may approve. (*Id.*, pg. 13, ¶6(a); *see* Pls. Mot. for

Attorney Fees and Costs, ECF No. 36). The Settlement Agreement also procures significant

facility improvement measures to the Medley Landfill, which are valued at approximately

$500,000.[7] (ECF No. 34-1, pg. 8 of 32, Sec. III, ¶y).

Altogether, the proposed Settlement Agreement provides highly valuable monetary relief

for property damages previously incurred, in addition to significant improvement measures, and it

should be approved as fair, adequate, and reasonable.

---

[7] As part of the Settlement, the Parties agreed that Waste Management would modify its operation of the Landfill through the following improvement measures:

A.   Waste Management previously agreed with the City of Doral to certain remedial measures related to odor control at the Medley Landfill pursuant to an agreement dated August 14, 2020 ("Medley Remedial Measures"). The Medley Remedial Measures are expected to cost in excess of nine million dollars and were agreed to by Waste Management after the Plaintiff's filing of this lawsuit, which asserts claims made by the Settlement class with regard to property value claims and odors coming from the Medley Landfill. (ECF No. 34-1, pg. 18, ¶8).

B.   In addition to the Medley remedial measures mentioned above, Waste Management shall undertake remedial measures valued at $500,000 designed to further reduce odor emissions from the Landfill. Such remedial measures will occur within 12 months of the Effective Date. (*Id.*, pg. 18-19, ¶8(b)-(c)). The specific remedial measures obtained through this Settlement Agreement include that Defendant will:

    i.   Purchase and install three (3) new totes which will operate with solar panels and dispersion nozzles in order to mist an odor neutralizing agent in the SW area of the Landfill as required given atmospheric/weather conditions and other factors;

    ii.   Purchase odor neutralizing agent and fill the new totes with the same on an as-needed basis so that the misting systems remain fully operational on a projected five (5) year basis; and

    iii.   Add two (2) monitoring locations to the night odor patrol/monitoring program operated by Waste Management, on a projected five (5) year basis.

In exchange for the valuable monetary benefits and facility improvements, the proposed settlement procures a full release and discharge by Plaintiff and each Class Member of any and all claims that were, or could have been, asserted against the Releasors between March 19, 2016 and the Effective Date of the Settlement ("Class Period").[8] (*Id.*, pg. 5 ¶ 3(f); pg. 6, ¶ 3(i); pg. 19, ¶9). The Release expressly preserves the Class' right to bring any claims for personal injuries.  (*Id.*, pg. 20 ¶ 9(a)). The Release also preserves any future claims based on odors or other airborne emissions that occurs after the Effective Date. (*Id.*)  However, the Release binds all Class Members who fail to opt-out of the settlement from suing Defendant relating to the allegations made in the Action.

The Settlement Agreement called for Class Counsel to administer the settlement and required that individual notice be sent to the residential addresses within the Class Area by first class mail within sixty (60) days of preliminary approval.  (*Id.*, pg. 16, ¶7(a)(iv); *see also* **Ex E**, Class Notice). This Court's Preliminary Approval Order required that notice be disseminated to the Class by May 26, 2021. (ECF No. 35, pg. 9 of 19). The court-approved Notice Plan was effectuated successfully by Class Counsel. (**Ex. 1**, ¶31). On May 17, 2021, the court-approved longform notice was dispatched to all households within the Class Area via first class U.S. mail. (ECF No. 36-2, ¶10; **Ex. 1**, ¶32). Class Counsel also published the Settlement Agreement and all pertinent settlement-related documents online at a unique webpage to which the longform notice/claim form directed Settlement Class Members. (ECF No. 36-1, ¶18; **Ex. 1**, ¶35).

From the date notice was mailed, Class Members were afforded forty (40) days to object to or opt out of the Settlement. (ECF No. 35, pg. 9). Class Members were provided sixty (60) days

---

[8] See the Settlement Agreement at page 19-21, ¶9 for specific definitions of the "Releasing Parties", "Released Claims," and the "Released Parties."

6

from the date Notice was mailed to submit a valid, timely Proof of Claim to Class Counsel for an equal share of the common fund. (ECF No. 34-1, ¶7(d); ECF No. 34-2, Claim Form, pgs. 2-5).

The reaction of the Class to the Settlement was highly favorable, as 171 valid claims were filed, compared to only 13 opt-outs and one lone objection. (**Ex. 1**, ¶37-39). No objections were made regarding the fairness or adequacy of the $1,112,500 in monetary compensation, and no objections were made to the requested attorneys' fee. (**Ex. 1**, ¶40).

The only objection to the Settlement Agreement was made by a single household, by Guillermo Mutis and Casilda Manzano. The lone objection states as follows:

> We object that the settlement does not include any warranty, assurance, or compromise from the Waste Management, Inc of Florida, that the emission of pollutants, air contaminants, and noxious odors ("emissions") from the Medley Landfill will be reduced or controlled. They may even increase in the future and the pertaining class will not have any legal right to present a claim.

(**Ex. 4**, Objection(s)). For the following reasons, the lone objection should be overruled, and the Settlement should be approved as fair, adequate, and reasonable.

## II.     ARGUMENT

**Legal Standard.**

"Public policy strongly favors the pretrial settlement of class action lawsuits." *In re United States Oil and Gas Litig.*, 967 F.2d 489, 493 (11th Cir. 1992).  Settlement "has special importance in class actions with their notable uncertainty, difficulties of proof, and length." *Behrens v. Wometco Enterprises, Inc.*, 118 F.R.D. 534, 538 (11th Cir. 1988).  "Settlements of complex cases contribute greatly to the efficient utilization of scarce judicial resources and achieve the speedy resolution of justice, for a just result is often no more than an arbitrary point between competing notions of reasonableness[.]" *Id.* (internal citations and marks omitted).

Under Rule 23(e)(2), the Court may approve a class action settlement "after a hearing and only on finding that it is fair, reasonable, and adequate after considering whether:

> (A) the class representatives and class counsel have adequately represented the class;
> (B) the proposal was negotiated at arm's length;
> (C) the relief provided for the class is adequate, taking into account:
>> i.    the costs, risks, and delay of trial and appeal;
>> ii.   the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
>> iii.  the terms of any proposed award of attorney's fees, including timing of payment; and
>> iv.   any agreement required to be identified under Rule 23(e)(3); and
>
> (D) the proposal treats class members equitably relative to each other."

"Before approving a settlement, the district court must find that it 'is fair, adequate and reasonable and is not the product of collusion between the parties.'" *Nelson v. Mead Johnson & Johnson Co.*, 484 F. App'x 429, 434 (11th Cir. 2012) (quoting *Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984)). The Court's "judgment is informed by the strong judicial policy favoring settlement as well as by the realization that compromise is the essence of settlement." *Id.*

"Courts in the Eleventh Circuit evaluate six factors in determining whether to approve a class action settlement: (1) the existence of fraud or collusion among the parties in reaching the settlement; (2) the complexity, expense, and duration of the litigation; (3) the stage of proceedings at which the settlement was achieved and the amount of discovery completed; (4) the probability of the plaintiffs' success on the merits; (5) the range of possible recovery; and (6) the opinions of class counsel, the class representatives, and the substance and amount of opposition to the settlement." *Fruitstone v. Spartan Race, Inc.*, 2021 U.S. Dist. LEXIS 95860, *19-20, 2021 WL 2012362 (S.D. Fla. May 20, 2021) (citing *Leverso v. S. Trust Bank of Ala., N.A.*, 18 F.3d 1527, 1530 n.6 (11th Cir. 1994)).

**A.    The Settlement Was Reached as a Result of Arm's Length Negotiations with the Assistance of an Experienced and Disinterested Third Party Mediator, and**

8

**There Was No Fraud or Collusion between the Parties in Reaching the Settlement Agreement.**

Plaintiff and her experienced counsel have zealously represented the Class and negotiated an arm's length Settlement Agreement that secures ample relief for the Class while treating members of the Class equitably relative to one another. (**Ex. 1**, ¶17). The proposed Settlement Agreement represents an arms-length compromise that is the result of extensive pre-suit investigation, informal discovery between the parties, dispositive motion practice, and a full day of mediation on December 2, 2020 before a qualified and experienced neutral mediator, Nancy F. Lesser. (**Ex. 1**, ¶12-15).  *See, e.g.*, *In re Viropharma Inc. Sec. Litig.*, 2016 WL 312108, *8 (E.D. Pa. Jan. 25, 2016) ("'the participation of an independent mediator in settlement negotiations virtually ensures that the negotiations were conducted at arm's length and without collusion between the parties'") (quoting *Hall v. AT&T Mobility LLC*, 2010 WL 4053547, *7 (D.N.J. Oct. 13, 2010)).

"The very fact" of a third-party mediator's involvement "weighs in favor of approval." *Fruitstone*, 2021 U.S. Dist. LEXIS 95860 at *19-20 (citing *Poertner v. Gillette Co.*, 618 F. App'x 624, 630 (11th Cir. 2015) ("self-dealing contention" was "belied" by involvement of experienced mediator); *Lobatz v. U.S. In re Educ. Testing Serv. Praxis Principles of Learning & Teaching, Grades 7-12 Litig.*, 447 F. Supp. 2d 612, 619-20 (E.D. La. 2006) (use of special master to oversee mediation evidenced procedural fairness of negotiating process)). At mediation, a frank discussion was held between the parties regarding the substantive costs and benefits presented to each side. Both sides carefully evaluated the value of this case and were able to agree that the benefits of early resolution greatly outweighed the risks and costs of prolonged complex litigation. While it does represent a compromise, the Settlement addresses the principal concerns of Plaintiff and her

fellow Class Members—to obtain monetary relief and secure facility improvements that endeavor to prevent problematic emissions moving forward.

Plaintiff's counsel is indeed qualified, experienced, and capable of conducting litigation of this sort, as it has done many dozens of times in similar cases. *See Narvaez v. Law Offices of Antonio Duarte, III, P.A.*, 2015 U.S. Dist. LEXIS 37744, *7, 2015 WL 1353219 (M.D. Fla. March 25, 2015) (quoting *Griffin v. Carlin*, 755 F.2d 1516, 1533 (11th Cir. 1985)). As one federal court noted:

> Class Counsel—from the Detroit-based firm Liddle & Dubin, P.C.—are among the few attorneys that specialize in class-action odor-nuisance litigation. Class Counsel skillfully and vigorously investigated and prosecuted the Class's claims … Absent the skill and efficiency of Class Counsel, it is also unlikely that individual Class Members could have obtained any recovery on their nuisance claims.

*Batties v. Waste Mgmt. of Pa., Inc.*, No. 14-7013, 2016 U.S. Dist. LEXIS 186335, at *47 (E.D. Pa. May 11, 2016). Plaintiff's counsel has been appointed to represent classes of residents impacted by pollution in dozens of similar cases. (**Ex. 1**, ¶6). The firm of Liddle & Dubin has litigated and resolved dozens of similar noxious landfill air pollution class actions, and the settlement amount is very similar to many other cases of this type, with similar merits and challenges. (**Ex. 1**, ¶20).

Here, Class Counsel's advocacy has been integral to this outstanding result, and there is no fraud, collusion, or anything of the like. This factor weighs heavily in favor of final approval.

**B.     The Complexity, Expense, and Duration of the Litigation Weighs Strongly In Support of Finally Approving the Settlement.**

"[C]omplex class actions are 'notably difficult and notoriously uncertain.'" *Thorpe v. Walter Inv. Mgmt. Corp.*, 2016 U.S. Dist. LEXIS 144133, *9-10 (S.D. Fla. October 14, 2016) (quoting *In re Hi-Crush Partners L.P. Sec. Litig.*, No. 12-CIV-8557 CM, 2014 U.S. Dist. LEXIS 177175, 2014 WL 7323417, at *3 (S.D.N.Y. Dec. 19, 2014)). When evaluating this factor, "[t]he

Court should consider the significant burden this case would have imposed if it went to trial." *Thorpe*, 2016 U.S. Dist. LEXIS at *9-10 (citing *Ressler v. Jacobson*, 822 F. Supp. 1551, 1554 (M.D. Fla. 1992)). Considering the costs, risks, and delay of prosecuting this case through class certification, trial and possible appeal, this Settlement easily satisfies the fair, adequate, and reasonable criterion.

Cases like this are extremely expensive to litigate, and it is generally not economically feasible in private practice to take on cases like this on an individual basis. (**Ex. 1**, ¶22). In prior odor nuisance class actions, L&D has advanced more than $200,000 (largely for costs related to scientific expert testimony) at the class certification stage alone. (*Id.*, ¶23, 26). Such expenses can detract significantly from the Class' ultimate recovery. (*Id.*). To date, L&D has advanced more than $30,000 in costs to date for the benefit of the Class, and the certainty of immediate monetary relief and facility improvements is not worth risking for the prospect of a better outcome that, if it comes at all, would be many years down the road and reduced by the substantial litigation expenses that would be required to take it through class certification and trial. (*Id.*, ¶25-26).

After considering the complexity, expense, and duration associated with prolonged litigation, it is Plaintiff's counsel's experienced opinion that settlement on the proposed terms is the most desirable course for Plaintiff and the Class to take.

### C.     The Stage of Proceedings at which the Settlement Was Achieved and the Amount of Discovery Completed Supports Final Approval.

"Public policy strongly favors the pretrial settlement of class action lawsuits." *In re United States Oil and Gas Litig.*, 967 F.2d at 493. "The purpose of considering this factor is to ensure that plaintiffs had sufficient information to evaluate the case and to determine the adequacy of the settlement." *Thorpe v. Walter Inv. Mgmt. Corp.*, 2016 U.S. Dist. LEXIS 144133, *11 (S.D. Fla.

October 14, 2016) (citing *Behrens v. Wometco Enterprises, Inc.*, 118 F.R.D. 534, 544, 1988 U.S. Dist. LEXIS 254, *29 (S.D. Fla. 1988)). This has been satisfied here.

While formal discovery had not yet commenced, this outstanding result was reached in an efficient and effective manner by experienced counsel who conducted a diligent pre-suit investigation of the claims prior to filing litigation and were armed with sufficient information regarding the Landfill's alleged emissions and the size and scope of the damages experienced by the Class to adequately evaluate the case and determine the adequacy of the Settlement Agreement. (**Ex. 1**, ¶ 15). Class Counsel's experience and pre-suit investigation allowed this settlement to be reached without wasting unnecessary time and resources, which is an outstanding result for Plaintiff and the Class considering that class discovery and certification is typically measured in years—during which no benefits would inure to the Class. (*Id.*, ¶ 14, 24-25).

Liddle & Dubin, P.C. ("L&D") is one of the few, if not only, firms in the country that devotes a large proportion of its practice to environmental air pollution class actions like this, and Class Counsel has extraordinary experience in valuing these unique cases, based on the unique facts presented. (*Id.*, ¶3). The relief obtained through this Settlement compares very favorably to other recent L&D settlements in industrial air pollution class actions. A few recent examples of similar resolutions reached by Class Counsel at L&D include: *Hamilton v. 3D Idapro Solutions, LLC*, Case No. 18-cv-54-jdp (W.D. Wis.) (final approval of $725,000 settlement with no facility improvements); *Keech and Newfield v. Sanimax USA, LLC*, Case No. 18-cv-683 (D. Minn.) (final approval of $750,000 settlement with no facility improvements); *Alley v. Western Sugar Cooperative*, Case No. 2017-cv-30078 (Col., Morgan Cnty. Dist. Ct.) (final approval of $950,000 settlement with no facility improvements); *Plass, et al v. Sanimax USA, LLC*, Case No. 2015-cv-000165 (Wis., Brown Cnty. Cir. Ct.) (final approval of $915,000 settlement with no facility

improvements). (*Id.*, ¶20). Each of these cases involved substantial discovery and motion practice prior to mediation; yet a measurable better result was obtained here. (*Id.*)

L&D is highly experienced in litigation of this type, and the $1,112,500 in monetary relief obtained here, plus the $500,000 in facility improvements, compares very favorably to other settlements, despite this case's relatively early resolution. The fact that this outstanding result was reached without incurring any unnecessary costs and expenses associated with expert discovery and prolonged motion practice weighs in favor of settlement here, as L&D's prior experience demonstrates that a more favorable result was unlikely even if the case were litigated through class certification and/or trial. Class Counsel was equipped with adequate information to zealously mediate the case on behalf of the Classs, and this factor weighs in favor of final approval.

### D.     The Probability of the Plaintiffs' Success on the Merits in This Complex Environmental Class Action Weighs in Favor of this Outstanding Settlement.

Even where a case has a strong likelihood of success on the merits, this Court will approve a proposed class action settlement under this factor when "there exists a potential that the class could endure a long and expensive trial only to come away with nothing." *Hall v. Bank of Am., N.A.*, 2014 U.S. Dist. LEXIS 177155, *17-18, 2014 WL 7184039 (S.D. Fla. Dec. 17, 2014). Further, "even if the probability of success and potential damages award could be significantly higher than the settlement amount, that factor is outweighed by another—the range of possible recovery." *Guthrie v. A Plus Home Health Care, Inc.*, 2014 U.S. Dist. LEXIS 199052, *9, 2014 WL 12862436 (S.D. Fla. Nov. 5, 2014).

Here, Plaintiff maintains that this is a good case, with a decent chance of ultimate success in proving that Defendant caused a nuisance on her property. However, the difficulties of litigating a class action case of this nature through class certification, merits discovery, and trial are difficult

to overstate. Odor nuisance class actions are different from many other substantive categories of class action litigation, in that they are not infrequently denied certification depending on the underlying factual circumstances. Beyond certification, liability and damages in such cases entail complex scientific proof and competing observational testimony that makes the ultimate outcome very difficult to predict. Beyond that, appellate courts have been particularly hostile to large jury awards in odor nuisance cases. *See, e.g.*, *Babb v. Lee Cty. Landfill SC, LLC*, 747 S.E.2d 468, 471 (2013) (reducing, via certified question, $2,332,500 jury verdict in *Babb v. Lee Cty. Landfill SC, LLC*, 298 F.R.D. 318, 320 (D.S.C. 2014) based on limitations on recoverable damages).

Plaintiff continues to believe that class certification would have been appropriate in this case even absent settlement.  But Plaintiff also recognizes that class certification, particularly in an environmental air pollution case, is anything but certain. While class actions have become increasingly difficult to certify in general, some courts have extended that difficulty to environmental class actions in particular.  *See Brooks v. Darling Int'l, Inc.,* No. 1:14-cv-01128-DAD-EPG, 2017 U.S. Dist. LEXIS 49660 (E.D. Cal. Mar. 30, 2017) (denying class certification without prejudice); *Hamilton v. 3D Idapro Sols., LLC*, No. 18-cv-54-jdp, 2019 U.S. Dist. LEXIS 128217, at *3 (W.D. Wis. Aug. 1, 2019) (same). Therefore, beyond the "rigorous analysis" standard now employed in Rule 23 class actions, Plaintiff recognizes the significant risk in obtaining class certification. *See Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541 (2011).  Further, even where certification is granted, the possibility of appeal and/or decertification remains as a powerful force weighing in favor of settlement. *See Powell v. Tosh*, No. 5:09-CV-00121, 2013 U.S. Dist. LEXIS 120448, at *5 (W.D. Ky. Aug. 2, 2013) (decertifying class).

Even if Plaintiff were able to obtain class certification, she would have to affirmatively establish upon summary judgment and trial that the spread of Defendant's emissions and that those

14

emissions were of such frequency, intensity, and duration to constitute a nuisance. Defendant would likely point to several other area facilities as possible sources of the odors that the Class would testify to and challenge every aspect of Plaintiff's proof of Defendant's emissions. This would likely involve competing scientific testimony of sufficient complexity that the ultimate outcome would be anything but certain. Further, Defendant would be likely to vigorously oppose Plaintiff's evidence on damages. Determining the damages attributable to a nuisance requires that those damages be isolated from numerous other factors that impact value. One can be sure that Defendant would have offered evidence of countless other factors, real or hypothetical, claiming that much or all of any loss in value claimed to be attributable to Defendant's Landfill was actually caused by those other factors.

This case was undertaken on a contingent fee basis without any guarantee of recovery. (**Ex. 1**, ¶ 27). Given that the proposed Settlement provides significant monetary relief and facility improvement measures, the certainty provided by settlement is not worth risking for the mere prospect of a better outcome that could result in a zero recovery for Plaintiff and the Class. (*Id.*, ¶21). Given the highly favorable terms of the Settlement, this factor weighs overwhelmingly in favor of final approval.

> **E.     This Settlement Is Firmly within the Range of Possible Recovery and Should Be Finally Approved.**

"In determining whether a settlement is fair in light of the potential range of recovery, the Court is guided by the important maxim that the fact that a proposed settlement amounts to only a fraction of the potential recovery does not mean the settlement is unfair or inadequate. This is because a settlement must be evaluated in light of the attendant risks with litigation." *Torres v. Bank of Am. (In re Checking Account)*, 830 F. Supp. 2d 1330, 1350 (S.D. Fla. 2011) (internal

citations and marks omitted).  Indeed, depending on the attendant complexity, likely expense, and attendant risks involved in the litigation and the underlying factual circumstances, "[a] settlement can be satisfying even if it amounts to a hundredth or even a thousandth of a single percent of the potential recovery." *Behrens v. Wometco Enterprises, Inc.*, 118 F.R.D. 534, 542 (S.D. Fla. 1988). Such a fractional recovery is hardly an issue here, as this Settlement provides significant monetary relief amounting to $1,112,500 to compensate the Class for the property damages alleged and approximately $500,000 in additional facility improvement measures aimed at curbing problematic emissions moving forward. This recovery is easily within the range of recovery to be expected in cases like this.

Odor nuisance cases generally do not resolve before trial in the eight-figure range, and Class Counsel is not aware of any class action involving nuisance odors alone that has. (**Ex. 1**, ¶20). The relief obtained through this Settlement compares very favorably to other similar L&D settlements in industrial air pollution class actions. A few recent examples of similar resolutions reached by Class Counsel at L&D, and approved by other courts, include: *Hamilton v. 3D Idapro Solutions, LLC*, Case No. 18-cv-54-jdp (W.D. Wis.) (final approval of $725,000 settlement with no facility improvements); *Keech and Newfield v. Sanimax USA, LLC*, Case No. 18-cv-683 (D. Minn.) (final approval of $750,000 settlement with no facility improvements); *Alley v. Western Sugar Cooperative*, Case No. 2017-cv-30078 (Col., Morgan Cnty. Dist. Ct.) (final approval of $950,000 settlement with no facility improvements); *Plass, et al v. Sanimax USA, LLC*, Case No. 2015-cv-000165 (Wis., Brown Cnty. Cir. Ct.) (final approval of $915,000 settlement with no facility improvements); *Fuehrer v. Nestle Purina Petcare Co.*, Case No. 5:20-cv-03910 (E.D. Pa.) (final approval of $800,000 settlement with no facility improvements). (*Id.*)

As stated previously, taking on individual nuisance claims in cases like this is not generally

an economically feasible proposition for private practitioners. (*Id.*, ¶22). That is because individual damages are not generally large enough to justify taking on the costs associated with proving individual claims. (*Id.*) For example, following a trial in an individual nuisance odor trial, the claimants were awarded damages amounting to $16,000 and $19,000 respectively. *See Durrance v. Sanders*, 329 So. 2d 26, 28-29 (Fla. Ct. App. 1976). However, the verdict was overturned because the Florida court of appeals determined that "the nuisance maintained by appellants (the piles of compost) was not proved to have proximately caused the injuries suffered by appellees[.]" *Id.* at 29. *Durrance* demonstrates two facts that are relevant to the Court's analysis. First, the upper end of nuisance damages are typically measured in the low end of the four or five figure range. Second, these cases are highly risky to take through trial and all available appeals, and they are susceptible to a zero-dollar recovery. Through this Settlement, Plaintiff has achieved both primary objectives of the litigation—to secure money damages for property damages and to obtain facility improvement measures aimed at curbing problematic emissions moving forward.

Thus, compared to both other class action nuisance settlements, and the damage figures that would likely to result following a full trial and appeal, this Settlement easily falls within the range of reasonable recoveries and is fair, reasonable, and adequate. More importantly for this analysis, the best possible recovery that could reasonably be expected would not greatly exceed the value of the present Settlement, and the final fairness decision must ultimately weigh the significant factual, legal, and procedural risks that are present. The Settlement should accordingly be approved as fair, adequate, and reasonable in light of all attendant circumstances.

**F. The Overwhelmingly Positive Reaction of the Class and the Lack of Meritorious Objections Weighs Very Heavily in Favor of Approving the Settlement.**

The final factor to consider in determining whether to approve a proposed class action

settlement involves "the opinions of class counsel, the class representatives, and the substance and amount of opposition to the settlement." *Fruitstone v. Spartan Race, Inc.*, 2021 U.S. Dist. LEXIS 95860, *19-20, 2021 WL 2012362 (S.D. Fla. May 20, 2021) (citing *Leverso v. S. Trust Bank of Ala., N.A.*, 18 F.3d 1527, 1530 n.6 (11th Cir. 1994)). Here, the opinions of Class Counsel have been discussed at length, and Plaintiff has demonstrated her full support by signing the Settlement Agreement. Thus, the final consideration is whether there is any opposition to the settlement, and, if so, whether any opposition raises specific issues that are meritorious enough to outweigh the other factors weighing in favor of final approval of this mutually negotiated resolution.

This Court has considered the "lack of objection as a significant factor in determining whether the proposed Class Settlement is reasonable to the Class as a whole." *Allapattah Servs. v. Exxon Corp.*, 2006 U.S. Dist. LEXIS 88829, *42 (S.D. Fla. April 7, 2006). Here, the response of the class has been almost unanimously positive. 171 valid, timely claims were filed. 13 Class Members submitted opt-outs (**Ex. 3**), and only one objection was submitted. (**Ex. 4**). The only objection filed in response to the Settlement Agreement was made by a single household, by Guillermo Mutis and Casilda Manzano. The lone objection states as follows:

> We object that the settlement does not include any warranty, assurance, or compromise from the Waste Management, Inc of Florida, that the emission of pollutants, air contaminants, and noxious odors ("emissions") from the Medley Landfill will be reduced or controlled. They may even increase in the future and the pertaining class will not have any legal right to present a claim.

(**Ex. 4**, Objection(s)). This objection lacks merit, as the Settlement Agreement provides $1,112,500.00 as consideration for property damages already incurred and $500,000 in facility improvement measures (in addition to the $9 million plus in improvement measures obtained through an agreement between Defendant and the City of Doral). Thus, the Settlement Agreement addresses *both* past property damages and decreases the future likelihood of nuisance-level

18

emissions due to facility improvement measures obtained through Class Counsel's advocacy on behalf of the Class.

Further, the objection is plainly incorrect that "the pertaining class will not have any legal right to present a claim" because the Settlement Agreement does not release any future rights to bring claims against Defendant for noxious emissions, and it expressly preserves any claims for medically diagnosed personal injuries. (ECF No. 34-1, pg. 20 ¶ 9(a)). Even if the Objectors' unsupported fears that nuisance emissions "may even increase" from the Landfill, they will maintain any right they previously held to bring a suit relating to future emissions that post-date the Effective Date of the Settlement Agreement. Additionally, the lone objection should be overruled because of its "failure to accurately address the risks associated with ongoing litigation", which are significant. *See Montoya v. PNC Bank, N.A.*, 2016 U.S. Dist. LEXIS 50315, *70-73 (S.D. Fla. April 13, 2016) (overturning numerous objections because other factors weighed in favor of settlement approval).

Balanced against the class of claimants who approved of the Settlement Agreement, or expressed tacit consent by failing to make claims, object, or opt-out, the single objection serves as no basis for upending this outstanding Settlement Agreement. *See Chakejian v. Equifax Info. Servs.*, 275 F.R.D. 201, 212 (E.D. Pa. 2011) (stating that "[c]ourts have generally assumed that silence constitutes tacit consent to the agreement."). Thus, the overwhelmingly positive reaction of the Class strongly supports final approval of the Settlement.

**G.    The Notice Was Effective and Constituted the Best Notice Practicable Under the Circumstances.**

In notifying members of the Class, a plaintiff is required to use the "best notice practicable under the circumstances." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974).  Where the

addresses of Class Members can be identified through a reasonable effort, direct notice is required. *Id.* at 175.  Plaintiff's Counsel procured a list of all mailing addresses in the Class Area and sent direct notice to members of the Class via direct mail notice. (ECF No. 37; **Ex. 1**, ¶32).  Plaintiff's Counsel mailed the court-approved longform notice attached to Plaintiff's Motion for Preliminary Approval, in addition to the court-approved Claim Form to all addresses located within the Class Area. (*Id.*).  In accordance with the approved notice plan, Class Counsel also published the Notice and all relevant settlement documents to their website and had staff available to field questions and support Class Members in submitting proper claim forms, objections, and opt-outs. (*Id.* ¶29-30, 35).  Because the notice was made directly to the addresses in the Class Area via first class U.S. Mail, the proposed class notice procedures constituted the best notice practicable under the circumstances. *See Newman v. Eduardo Meloni, P.A.*, 2020 U.S. Dist. LEXIS 100063, *5, 2020 WL 3052801 (S.D. Fla. June 5, 2020) (approving notice plan involving direct mail notice to the class). The reaction of the Class to the Settlement further demonstrated that the notice was effective and provided the Class with every available opportunity to participate and benefit and/or opt-out and object to the Settlement's terms. The Court should finally order that the notice was effective and approve the Settlement for all the reasons stated above.

## CONCLUSION

For the foregoing reasons, Plaintiff requests that the Court grant this unopposed Motion and enter the [Proposed] Final Judgment and Order, which is attached to the Settlement Agreement as **Exhibit 2**.

Respectfully submitted,

Dated: August 25, 2021

20

*/s/ Spencer Aronfeld*
**Spencer M. Aronfeld, Esq.**
Florida Bar No.: 905161
aronfeld@aronfeld.com
**Abby H. Ivey, Esq.**
Florida Bar No.: 1002774
ARONFELD TRIAL LAWYERS
1 Alhambra Plaza Penthouse
Miami, Florida 33134
P: (305) 441.0440
F: (305) 441.0198

LIDDLE & DUBIN, P.C.

/s/Steven D. Liddle
Steven D. Liddle *(Pro Hac Vice)*
Nicholas A. Coulson *(Pro Hac Vice)*
Matthew Z. Robb (*Pro Hac Vice*)
975 E. Jefferson Avenue
Detroit, Michigan  48207
(313) 392-0025

*Attorneys for Plaintiff*

21

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on August 25, 2021, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the Electronic Mail notice list, and I hereby certify that I have mailed the foregoing document or paper via the United States Postal Service to the non-CM/ECF participants indicated on the Manual Notice list.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on August 25, 2021

By:  /s/ Spencer M. Aronfeld

1